GASSAWAY (UNITED STATES v.). See Case No. 15,190.

---

## Case No. 5,264.
### GASSETT et al. v. MORSE et al.
[21 Vt. 627; 3 N. Y. Leg. Obs. 350.]

District Court, D. Vermont. 1843.

ACT OF BANKRUPTCY — FRAUDULENT CONVEYANCE — PREFERENTIAL ASSIGNMENTS—ACT OF 1841.

1. A conveyance, or assignment, which is fraudulent at common law, is within the meaning of the first section of the bankrupt act [5 Stat. 440], defining what shall be considered cause for declaring a person a bankrupt; and so is every conveyance, or assignment, which contravenes the provisions and objects of the bankrupt act, though good at common law.

2. A conveyance, or assignment, by a trader in embarrassed circumstances, of all his effects to a particular creditor, whether voluntary, or under pressure of legal process, or with intention to take the benefit of the bankrupt act, or not, is an act of bankruptcy, within the first section of the bankrupt law.

3. Where a portion of the property of a debtor was under attachment, at the suit of a creditor, and another creditor executed to the attaching creditor his bond, conditioned for the payment of the debt, and thereupon the attachment was released, and then the debtor executed to the second creditor a general assignment of all his property, to secure a debt due to him, and also to secure him for so giving his bond to the attaching creditor, and for the benefit of his other creditors, generally, but creating preferences in favor of some of them, it was *held*, that this was both an act of bankruptcy, within the first section of the bankrupt act, and a giving of an unlawful preference, within the second section.

4. The clause in the bankrupt act in reference to transactions with the bankrupt entered into in good faith more than two months previous to the filing of the petition against him, was only intended to give validity to such transactions, so far as it concerns the party dealing with the bankrupt, and cannot be understood as giving any protection to the bankrupt himself, either on the question of his bankruptcy, or of his right to a discharge.

This was a petition by Henry Gassett and others against Jonathan Morse and James L. Chapman, and was filed August 12th, 1842. The petition, after setting forth an indebtedness to the petitioning creditors in a sum exceeding five hundred dollars, alleged, that Morse and Chapman, being partners in trade, owing more than two thousand dollars, and insolvent, on the twenty eighth day of May 1842, made and executed to one Orange Smith a fraudulent conveyance, assignment and transfer of all their lands and tenements, goods and chattels, and credits and evidences of debt; and prayed, that they might be declared bankrupts. It appeared, that, on the twenty seventh day of May, 1842, Amplius Blake, to whom Morse and Chapman were indebted in the sum of $4000, attached all the goods in their store to secure the debt; that on the day following Orange Smith, who was then holden as surety for Morse and Chapman on a note to the bank of Montpelier for $500, and on a note to Guarantor Hastings for $150, at the request of Morse and Chapman, and in consideration of their making the assignment hereafter mentioned, executed a bond to Blake, guaranteeing the payment of his debt, who thereupon discharged his attachment. On the same day Morse and Chapman accordingly executed to Smith an assignment of all their notes, amounting to $3550, all the demands due them on book, amounting to $3300, and all the goods and effects belonging to them in their store, amounting to $3000; to have and to hold the same for the better security and payment of the following cred-

[1] [Reported by Hon. William Cranch, Chief Judge.]

itors, in the following order: First, to the Bank of Montpelier $500, Guarantor Hastings $150, Charles B. Chandler $300, Lucy Carpenter $41, Jeremiah Foster $30, Francis Sturtevant $42, Jenison Jones $67, Paul Royce $35, E. O. Joslin $67, and George W. Barker $34. Second, to pay Amplius Blake six promissory notes, dated May 24, 1840, for $3400, and the interest thereon. Third, to pay all other debts due from Morse and Chapman, if the goods and effects should meet and pay the same, or in proportion as the said property and demands should be to the amount due from them. There was also a farther assignment at the same time, by Morse and Chapman to Smith, of their lease of the store for an unexpired term of three years. Smith took possession of the property under the assignments; and it appeared, that one object of the assignments was, to secure him for his liabilities as surety on the notes to the Bank of Montpelier and Guarantor Hastings, and for his liability on the bond given by him to Blake. It also appeared, that Morse and Chapman estimated their debts at $7,500; but there was no other evidence as to the amount.

PRENTISS, District Judge. At the hearing of this case I had a very strong opinion upon it, and ordinarily should have pronounced an immediate decision; but as the case was one of a good deal of magnitude, and of great interest, especially to one of the individuals concerned in the transaction, I thought it my duty on that account, more than on account of any real difficulty in the case, to examine it fully. I have taken pains to go through all the cases having any bearing upon the subject, have read them attentively and thoroughly, and the result has been a full confirmation of the opinion I at first entertained.

The general question is, whether an act of bankruptcy has been committed. What is an act of bankruptcy is to be ascertained from the first section of the bankrupt law. That section enacts, that any person, being a merchant, &c., may be declared a bankrupt in the following cases: 1. When he shall depart from the state, of which he is an inhabitant, with intent to defraud his creditors. 2. When he shall conceal himself to avoid being arrested. 3. When he shall willingly or fraudulently procure himself to be arrested, or his goods and chattels, lands or tenements, to be attached, distrained, sequestered, or taken in execution. 4. When he shall remove his goods, chattels, and effects, or conceal them, to prevent their being levied upon, or taken in execution, or by other process. 5. When he shall make any fraudulent conveyance, assignment, sale, gift, or other transfer of his lands, tenements, goods and chattels, credits, or evidences of debt. For any of the causes thus enumerated and specified, a trader may be proceeded against and decreed a bankrupt. But the last cause mentioned is the only one applicable to this case, because it

is the only one assigned or alleged in the petition; and the particular question is, was the assignment, which is relied upon as an act of bankruptcy, a fraudulent assignment, within the intent and meaning of the act? A conveyance, or assignment, which is fraudulent at common law, is undoubtedly within the meaning of the act: and so is every conveyance, or assignment, which contravenes the provisions and objects of the act, though good at common law. The act, for instance, prohibits all preferences, and, with the exception of certain specified priorities, liens and securities, declares, that the property of the bankrupt shall be distributed, pro rata, among his creditors. Any conveyance, or assignment, therefore, which is intended and operates to defeat this provision, though ever so fair as between the parties to it, and entirely unimpeachable on general principles of law, is a fraudulent conveyance, and consequently an act of bankruptcy. The clause, declaring what conveyances shall constitute acts of bankruptcy, is very broad and general in its terms, the language used being, as we have seen, "any fraudulent conveyance, assignment, sale, gift, or other transfer" of property. The provision is substantially the same as the provision on the same subject in the English bankrupt act of 1 Jac. I., now contained in the consolidated act of 6 Geo. IV; and it is evident enough, that in framing and passing the act of congress reference was had to the English statutes and the English decisions upon them, and that it was meant, that the act of congress should be subject to the same construction.

In looking into the English decisions, there is found to be a distinction, running throughout all the cases, between a conveyance by a trader, in debt, of all his effects, and a conveyance of only a part. The former is held to be fraudulent, and ipso facto an act of bankruptcy, in and of itself. The latter is held to be fraudulent, only when made voluntarily, in contemplation of bankruptcy, and for the purpose of giving a preference. A conveyance by a trader of all his effects to one or more creditors, in exclusion of others, is deemed to be an act of bankruptcy, because, in addition to giving a preference, it is, in itself, a breaking or failing in business, rendering him incapable of going on in his trade, which is the original definition and meaning of bankruptcy. Insolvency is not material; for a man may be a bankrupt without being insolvent, or insolvent without being a bankrupt. A man may be actually insolvent, and yet go on in trade many months, or years, without failing, or becoming bankrupt.

The distinction between a conveyance by a trader of all and a part only of his effects, we repeat, pervades all the adjudged cases. It is to be found in the earlier decisions, and remains undisturbed and unquestioned in the more modern reports. It is sanctioned by concurrent opinions of the most eminent English judges for nearly a century, and has

been recently recognized by some of the soundest and most enlightened judges in this country. It was fully adopted by Conkling, J., in Barton v. Tower [Case No. 1085]; by Story, J., in Arnold v. Maynard [Id. 561]; and by Thompson, J., in Wakeman v. Hoyt [Id. 17,051]. The latter said, that a conveyance, or assignment, by a trader in embarrassed circumstances of all his effects to a particular creditor, whether voluntary, or not, or with intention to take the benefit of the bankrupt act, or not, was, per se, a fraud upon the act of congress and an act of bankruptcy. So far has the doctrine been carried in England, and in one instance at least in this country, that a conveyance by a trader of all his effects, or all but a colorable part, in trust for the benefit of all his creditors rateably, has been held to be an act of bankruptcy, because it enables him to appoint his own trustees, and takes the estate out of the operation of the bankrupt law. In Eckhardt v. Wilson, 8 Term R. 140, where partners assigned all their partnership effects in that way, and only a separate creditor dissented, the point was considered so clear and well settled, that it was not even argued. A conveyance by a trader of only a part of his property to a particular creditor stands, as we have already remarked, upon a different footing. To render such a conveyance fraudulent, as against the bankrupt law, it must be voluntary, as well as in contemplation of bankruptcy. It is not unlawful, though made while in failing circumstances, or when actually insolvent, if made under pressure by the creditor, and in the ordinary course of business. The cases cited and relied upon by the opposing counsel are all of this character. They are cases of a transfer or delivery of a part, only, of the effects of the trader, and go to confirm the general proposition, that the substantial distinction, in all the cases, is; between the assignment of all, and a part only.

In the present case, the assignment was of all the partnership property, including goods, notes, and demands on book; and it does not appear, that the respondents had any separate property, except their household furniture. If not actually insolvent, it is abundantly evident, that they were deeply indebted and greatly embarrassed. It is true, the goods at the time were under an attachment, at the suit of a creditor, for a large debt; and Smith, the assignee of the property, for the purpose of removing the attachment, executed his bond, conditioned to pay the debt, and took the assignment to indemnify himself for that and certain other debts, for which he had previously become holden as surety. But this circumstance, though it shows that the security was given under the pressure of legal process, and for a valuable consideration, does not take the case out of the general rule. In Butcher v. Easto, Doug. 295, where a trader, being ar-

rested for a debt by one of his creditors, executed a bill of sale of all his effects to another creditor, to whom he was also indebted, as security for both debts, and the latter, on that condition, became bail for him, and he obtained his discharge, it was determined, that the bill of sale was fraudulent and an act of bankruptcy. So in Newton v. Chantler, 7 East, 138, a bill of sale to a particular creditor of all the effects of a trader was held to be an act of bankruptcy, notwithstanding it was given by the trader, when under arrest at the suit of the particular creditor, for a just debt. Lord Ellenborough said, that the bill of sale being given under the pressure of legal process made no difference, for it was not like the case of a partial conveyance, only, of a trader's property. And Le Blanc, J., after referring to the case of Butcher v. Easto, observed, that the security being given to the particular creditor, at a time when he held the trader under arrest, did not distinguish the case from the general class of cases, where a conveyance of a trader's effects to a particular creditor had been uniformly holden to be an act of bankruptcy.

The present case falls within the principle of the cases just cited; for in this, as in them, though the assignment was made under the pressure of legal process, and the debts secured were bona fide debts, it was an assignment of the effects, exceeding in value the amount of the debt due to the attaching creditor at least six thousand dollars; and though it embraced all the debts owing by the respondents, in its provisions for payment out of the effects, a preference was given to particular creditors and classes of creditors, to the prejudice of other creditors. In addition to the evidence of a preference appearing upon the face of the assignment, Smith testifies, that the respondents would not consent to make the assignment, without providing for the payment of their home creditors first. Here is direct proof, then, that one leading motive was to give a preference; and all the facts and circumstances, collateral as well as others, combine to bring the case, in all particulars, fully and clearly within the principle established by the uniform current of judicial determinations. But in my judgment the case also comes within that provision in the second section of the bankrupt act, which declares "that all future payments, securities, conveyances, or transfers of property, or agreements, made or given by any bankrupt in contemplation of bankruptcy, and for the purpose of giving any creditor, indorser, surety, or other person, any preference or priority over the general creditors of such bankrupt, and all other payments, securities, conveyances, or transfers of property, or agreements, made or given by any such bankrupt, in contemplation of bankruptcy, to any person or persons whatever, not being a bona fide creditor, or

purchaser for a valuable consideration, without notice, shall be deemed utterly void, and a fraud upon this act." Now, if immediate, absolute bankruptcy were the necessary consequence of the assignment in this case, as we have seen it was, the assignment must be taken to be a transfer of property made in contemplation of bankruptcy, as well as for the purpose of giving a preference, since every man must be supposed to contemplate or intend that which is the necessary consequence of his own act; and such a transfer, when made to a surety, as this was, is expressly declared, by the provision referred to, to be a fraud upon the act.

It is insisted, however, that admitting the assignment to have been an act of bankruptcy, yet having been made more than two months before any proceedings in bankruptcy were instituted, the respondents are protected from the consequences of it by the proviso to the clause of the act just recited. The proviso declares, "that all dealings and transactions by and with any bankrupt, bona fide made and entered into more than two months before the petition filed against him, or by him, shall not be invalidated or affected by this act; provided, that the other party to any such dealings or transactions had no notice of any prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of this act." It is very manifest, that this saving provision was inserted, not for the sake of the bankrupt, but for the sake of the party dealing with him; and such a construction should be given to it, as will effectuate the legislative intention and object, without at the same time being inconsistent with the apparent sense and meaning. It cannot reasonably be taken to have any other effect, than merely to give validity to a transaction, bona fide entered into more than two months before the filing of the petition, so far as it concerns the party dealing with the bankrupt. It cannot be understood as giving any protection to the bankrupt himself, either on the question of bankruptcy, or on the question of his right to a discharge. If the transaction be fraudulent on his part, why should he not be decreed a bankrupt, or denied a discharge, as the case may be, though the rights of the other party under the transaction, who may be an innocent party, should remain unaffected? That this is the just construction is evident from the consideration, that the validity of the transaction is made to depend upon the condition, that the party dealing with the bankrupt "had no notice of any prior act of bankruptcy, or of the intention of the bankrupt to take the benefit of the act." The object was to protect transactions, on the part of a creditor, or other person, done in the common course of trade and business, without knowledge of any act of bankruptcy, or of any proceeding in bankruptcy being in contemplation. But where the transaction, as in this case, is a general, sweeping disposition of effects, and is, itself, unconnected with other circumstances, a substantive and complete act of bankruptcy, equally within the knowledge of both parties, the case is not within the proviso.